**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

CLAUDE DOUGLAS VARNEY,

                Petitioner,

v.

RAYMOND BOOKER,

                Respondent.

CIVIL NO. 2:09-CV-11127
HONORABLE MARIANNE O. BATTANI
UNITED STATES DISTRICT COURT

_____/

**OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS
CORPUS, GRANTING IN PART AND DENYING IN PART A CERTIFICATE OF
APPEALABILITY, AND GRANTING PETITIONER LEAVE TO APPEAL IN
FORMA PAUPERIS**

      Claude Douglas Varney, ("Petitioner"), presently confined at the Parnall

Correctional Facility in Jackson, Michigan, has filed a petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254. [1] In his application, filed by his attorney,

Phillip D. Comorski, petitioner challenges his convictions for second-degree

murder, M.C.L.A. 750.317; and possession of a firearm in the commission of a

felony, M.C.L.A. 750.227b. For the reasons stated below, the petition for writ of

habeas corpus is **DENIED.**

---

[1] When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the
Ryan Correctional Facility, but has since been transferred to the Parnall Correctional Facility. The only
proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an
incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See
Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006); *See also* Rule 2(a), 28 foll. U.S.C. § 2254.
Normally, the Court would order that the caption of the case be amended to reflect that the proper
respondent in this case is the warden of the Parnall Correctional Facility, the current location of petitioner.
However, because the Court is denying the petition, it will not do so in this case. *See Logan v. Booker,* No.
2007 WL 2225887, * 1, n. 1 (E.D. Mich. August 1, 2007).

## I.  Background

Petitioner was convicted of the above offenses following a bench trial in the

Detroit Recorder's Court before Judge George W. Crockett, III. [2]  Petitioner's

conviction arose out of the shooting death of Tommy Maples at a Veterans of

Foreign Wars (VFW) bar in Detroit, Michigan on September 17, 1993.  Petitioner

raised a claim of self-defense.

Antonio Carmona testified that he was at the bar sitting next to Maples at

the time of the shooting.  Carmona testified that petitioner entered the bar with

two women.  Petitioner and Maples gave each other a friendly "high-5s".  Maples

and petitioner then sat down across from each other at a table.  Carmona began

watching the television at the bar.  Carmona then heard a noise and the sound of

chairs being pushed back.  Carmona testified that petitioner and Maples both got

up and petitioner pushed Maples.  Carmona indicated that Maples had his hands

in the air and then grabbed his stomach after petitioner removed a gun from his

back.  Petitioner then exited the bar with a black gun in his hand, although

Carmona admitted that at the preliminary examination he had testified that he did

not know if petitioner had a gun at the time.  On cross-examination, Carmona

indicated that he turned away from watching television when he heard "scuffling"

and saw arms being pushed.  Carmona testified that he did not know where

---

[2] In 1996, the Michigan Legislature abolished the Detroit Recorder's Court and merged its functions with the Wayne County Circuit Court. *See Redmond v. Jackson,* 295 F. Supp. 2d 767, 769, n. 1 (E.D. Mich. 2003)(citing *Anthony v. Michigan,* 35 F. Supp. 2d 989, 996-97 (E.D. Mich. 1999)).

2

petitioner's gun was pointed when it discharged.

Sgt. Patrick Henahan took a statement from petitioner after he was arrested.  Petitioner told Sgt. Henahan that Maples had threatened him at the bar and it had looked like the decedent was reaching for a gun.  Petitioner indicated that he shot his gun to avoid getting shot by Maples.

Sharon Lopez observed petitioner enter the VFW bar, whereupon petitioner went over to Maples.  The two men shook hands, hugged, and sat at a table. Lopez subsequently heard a gunshot and witnessed the decedent with his hands in the air looking at his stomach.  Lopez testified that she did not see Maples with a gun.

Kathryn Jones, Maples' niece, testified that she arrived at the bar with petitioner, another woman, and an individual named Marcello.  Jones indicated that petitioner and Maples had a friendly discussion at a table.  Jones turned her back on them, but turned when she heard a "boom".  Jones testified that Maples grabbed his stomach and fell.  Jones then exited the bar with petitioner, the other female, and Marcello.  Petitioner threatened Jones and warned her not to mention anything about the shooting. Petitioner told Jones that he shot Maples in retaliation for shooting three of petitioner's club members.

Nancy Ligenza and Robert Butch both testified consistently with the testimony of Carmona, Lopez, and Jones.

Officer William Martin of the Detroit Police Department testified that he

3

responded to the shooting and found no guns at the bar, although he did recover a .45 casing in the floor, along with a windbreaker with blood.  Officer Martin also noticed a bullet hole.

Cheryl Culpepper testified for the defense.  Culpepper went to the VFW bar with petitioner, Marcello, and Kathryn Jones, because Jones wanted to obtain some cocaine from her aunt.  Once inside the bar, Culpepper noticed petitioner shake hands with a patron of the bar.  Culpepper subsequently heard a noise which sounded like a firecracker before seeing the decedent lying on the floor.  Culpepper left the bar with petitioner, Jones, and Marcello at the latter's suggestion.  Culpepper testified that Jones went with them voluntarily, even though she was hysterical.  Culpepper did not hear petitioner threaten Jones, although Jones informed Culpepper that her family believed that petitioner was involved in the shooting.

Marcello Guglieletti testified that he and his girlfriend Cheryl Culpepper went with petitioner and Kathryn Jones to the VFW, so that Jones could purchase some cocaine from her aunt.  The four gained admittance to the VFW through Jones.  Guglieletti noticed petitioner shake hands with Maples and sit down with him at a table.  Guglieletti testified that the decedent subsequently pulled a gun from his back area.  Petitioner responded by pulling a gun and shooting Maples.  As Guglieletti exited the bar with petitioner, he heard someone say "get the gun".  Guglieletti did not hear petitioner threaten Jones.

4

Gregory Howell testified that Mr. Guglieletti, petitioner, Culpepper, and Jones came to his house and stayed for 1 ½ hours, drinking, talking, and playing dice. Jones did not appear to be apprehensive or upset.

Joseph Whiting testified that in the summer of 1993, he had a confrontation with Maples. Petitioner intervened and hit Maples in the jaw. Whiting testified that Maples threatened that he was "going to get them". Whiting took the threat seriously because the decedent had a bad reputation.

Joseph Mathis testified that Maples informed him the fall of 1993 that he intended to kill petitioner. Mr. Mathis informed petitioner about this threat.

Petitioner was found guilty of the charges by the trial court judge.

Petitioner subsequently moved for a new trial and for a *Ginther* [3] hearing, claiming that he was deprived of the effective assistance of counsel. The hearing was held on February 16, 1996.

Peter Kelly testified that Maples informed him in 1993 that he was going to kill petitioner, because petitioner had previously fought with him. Kelly informed petitioner about this information. Kelly also told the police about this threat after Maples had been shot. Kelly testified that he informed petitioner's trial counsel about the threat, but that counsel did not appear interested in calling him to testify. Kelly further indicated that the decedent routinely carried a .9mm automatic pistol and was known as the "Southwest Hitman".

---

[3] *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973).

5

James Murphy testified that in the summer of 1993, Maples had called him after firing shots at Murphy.  Maples threatened over the phone to kill Murphy, any member of the Highwaymen Motorcycle Club, and petitioner.  Murphy advised petitioner of these threats and petitioner seemed concerned for his safety and the safety of his family.  Although Murphy informed petitioner's trial counsel of these threats, he was never called as a witness.

Pedro Cindron testified that in 1993, Maples informed him that he intended to kill petitioner the next time he saw him.  Cindron advised petitioner about these threats.  Cindron testified that he had seen the decedent armed with a firearm on several occasions.

Attorney Dominick Sorise testified that he had been retained to represent petitioner in his murder case.  Sorise admitted that he had interviewed Kelly, Murphy, and Cindron and that the men had informed him about the victim's prior threats towards petitioner and his habit of carrying a gun.  Although Mr. Sorise acknowledged that he had spoken several times with petitioner about whether to call him as a witness, Sorise indicated that he did not wish to call petitioner as a witness, even though petitioner could have testified that he actually saw the decedent pull out a gun before petitioner shot him.  Mr. Sorise admitted that he and petitioner had argued about petitioner testifying and that Sorise had convinced him not to take the stand and testify.  Sorise never advised petitioner of his right to testify nor did he tell him that he could insist on testifying.

6

Sorise indicated that the primary reason that he did not call petitioner to testify was because petitioner had given a statement to the police which essentially related his claim of self-defense. Sorise further noted that Guglieletti had also testified that he had seen Maples pull a gun on petitioner. Sorise acknowledged that petitioner's proposed testimony would have gone into more detail about the incident and his own state of mind at the time of the shooting.

Petitioner testified at the *Ginther* hearing that he wanted to testify at trial because, contrary to the statement as related by Sgt. Henahan, petitioner actually saw a gun in the victim's hand prior to the shooting, and that he shot him in self-defense. Petitioner claimed that he was prevented from testifying by his attorney.

At the conclusion of the *Ginther* hearing, Judge Crockett ruled that the testimony of Kelly, Murphy, and Cindron would have been cumulative to the evidence that was admitted at trial, therefore, it would not have changed the result of the trial. However, as to petitioner's other ineffective assistance of counsel claim, the trial court granted petitioner a new trial. Although Judge Crockett indicated that he did not believe petitioner's allegation that his counsel had never told him why he should not testify, and in fact, found that petitioner had "lied" with respect to that allegation, Judge Crockett nonetheless indicated that sitting as the fact-finder, it would have made a critical difference in the outcome of the case had petitioner testified, because his testimony was the only evidence

7

which could have established his state of mind at the time of the shooting.  Judge Crockett further ruled that the petitioner's statement to the police was not an adequate substitute to his testimony on the self-defense issue, because the statement was unsigned and thus unadopted by him.  Judge Crockett finally noted that no record had been made at the time of trial whether petitioner wanted to testify.   Judge Crockett granted petitioner a new trial and recused himself from the case.

The Wayne County Prosecutor's Office appealed the grant of the new trial. The Michigan Court of Appeals peremptorily reversed the order granting a new trial, holding that Judge Crockett abused his discretion in granting the new trial because " ... Defendant Varney did not overcome the presumption that trial counsel rendered effective assistance when advising him regarding his right to testify on his own behalf." *People v. Varney,* No. 193358 (Mich.Ct.App. July 10, 1996); *reconsideration denied* No. 193358 (Mich.Ct.App. October 1, 1996). Petitioner filed an application for leave to appeal to the Michigan Supreme Court, which was denied. *People v. Varney,* 456 Mich. 858, 568 N.W.2d 680 (1997).

Petitioner then filed a motion for relief from judgment, which was denied. *People v. Varney,* No. 93-012499-01 (Third Circuit Court, Criminal Division, February 10, 2006).  On May 8, 2007, the post-conviction court denied the supplemental motions for relief from judgment, while incorporating its February 10, 2006 denial. *People v. Varney,* No. 93-012499-01 (Third Circuit Court,

Criminal Division, May 8, 2007); *reconsideration den.* No. 93-012499-01 (Third

Circuit Court, Criminal Division, October 4, 2007).  The Michigan appellate courts

denied petitioner's post-conviction appeal. *People v. Varney,* No. 284050

(Mich.Ct.App. July 3, 2008); *lv. den.* 483 Mich. 881, 759 N.W.2d 376 (2009).

Petitioner seeks a writ of habeas corpus on the following grounds:

I.  Petitioner's state and federal rights to the effective assistance of
counsel were violated where trial counsel failed to investigate and
present a substantial defense, did not allow petitioner to testify, failed
to call critical defense witnesses, thereby denying petitioner effective
representation and due process of law pursuant to U.S. Const. Ams. V,
VI, XIV.

II.  Petitioner was further denied his right to effective assistance of
counsel when his attorney failed to object to the court's misapplication
of the law in his findings of fact, when he failed to object to the portion
of the petitioner's statement where he chose to refuse to answer
questions during an interrogation, where he failed to introduce evidence
through Officer William Martin that petitioner had previously attempted
to obtain a personal protection order against Mr. Maples based on
Maples' expressed threats on his life, and where he failed to impeach
prosecution witnesses with prior inconsistent statements and failed to
object to improper closing arguments by the Prosecutor, thereby
denying petitioner due process pursuant to U.S. Const. Ams. V, XIV.

III.  Petitioner was denied a fair trial and due process, where the trial
court held that self-defense was not a defense available to petitioner
because the evidence at trial established that he merely "believed" that
the decedent was armed with a gun, rather than actually seeing a gun
in the decedent's hands, which is a misapplication of the law of
self-defense and the functional equivalent of an erroneous instruction
to the jury, thereby denying petitioner due process pursuant to U.S.
Const. Ams. V, XIV.

IV.  Petitioner was denied a fair trial when the prosecutor impeached
the defense witnesses by questioning them as to why they had not
come to the police before trial with the information they possessed
concerning the incident, thereby implying that their testimony was

9

fabricated and denying petitioner due process pursuant to U.S. Const. Ams. V, XIV.

V.  The prosecutor erroneously introduced testimony which revealed that petitioner chose to make no statement when questioned by police about the gun that was allegedly used in the shooting, thereby denying petitioner due process pursuant to U.S. Const. Ams. V, XIV.

VI.  The trial court erred in not suppressing the statements of Sharon Lopez where the prosecution failed to turn over a witness statement in its possession, thereby denying petitioner due process pursuant to U.S. Const. Ams. V, XIV.

VII.  The prosecution committed reversible error when it repeatedly warned every defense witness that they could be prosecuted for perjury, thereby denying petitioner due process pursuant to U.S. Const. Ams. V, XIV.

VIII. The evidence was insufficient to support petitioner's conviction for second degree murder where the prosecution failed to meet their burden in disproving petitioner's theory of self-defense, where evidence tended to show [the victim] as the "initial aggressor" or using "excessive force", where the prosecution introduced uncontradicted evidence showing that Mr. Varney acted in hot blood, and where the trial judge, sitting as the trier of fact, concluded that there was no evidence of provocation, and that evidence showing the deceased was unarmed was dispositive to Mr. Varney's theory of self-defense, thereby depriving petitioner of due process pursuant to U.S. Const. Ams. V, XIV.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death

Penalty Act of 1996 (AEDPA), imposes the following standard of review for

habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits

in State court proceedings unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862 (2010)((quoting *Lindh v.*

11

*Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)).  "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct.770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* ( citing *Lockyer v. Andrade,* 538 U.S. 63, 75 (2003).  Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id.*

"[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington,* 131 S. Ct. at 786.  Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.*  Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal

12

justice systems,' not a substitute for ordinary error correction through appeal." *Id.*
(citing *Jackson v. Virginia,* 443 U.S. 307, 332, n. 5 (1979))(Stevens, J.,
concurring in judgment)).  Indeed, a "readiness to attribute error [to a state court]
is inconsistent with the presumption that state courts know and follow the law."
*Woodford,* 537 U.S. at 24.  Therefore, in order to obtain habeas relief in federal
court, a state prisoner is required to show that the state court's rejection of his
claim "was so lacking in justification that there was an error well understood and
comprehended in existing law beyond any possibility for fairminded
disagreement." *Harrington,* 131 S. Ct. at 786-87.

### III.  Discussion

**A.  The procedural default issue.**

Respondent contends that petitioner's second through eighth claims are
procedurally defaulted, because he raised them for the first time in his post-
conviction motion for relief from judgment and failed to show cause for failing to
raise these issues in his appeal of right, as well as prejudice, as required by
M.C.R. 6.508(D)(3).

Petitioner claims that his appellate counsel was ineffective for failing to
raise his claims in his appeal of right.  Ineffective assistance of counsel may
establish cause for procedural default. *Edwards v. Carpenter*, 529 U.S. 446,
451-52 (2000).  If petitioner could show that he received ineffective assistance of
appellate counsel that rose to the level of a Sixth Amendment violation, it would

excuse his procedural default for failing to raise his claims on his direct appeal in the state courts. *Seymour v. Walker*, 224 F. 3d 542, 550 (6th Cir. 2000).  Given that the cause and prejudice inquiry for the procedural default issue merges with an analysis of the merits of petitioner's defaulted claims, it would be easier to consider the merits of these claims. *See Cameron v. Birkett,* 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004).  Because "the procedural default issue raises more questions than the case on the merits", this Court will assume, for the sake of resolving the claims, that there is no procedural default by petitioner and will decide the merits of the claims. *Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003)(internal quotation omitted).

**B.  Claims # 1 and # 2.  The ineffective assistance of counsel claims.**

In his first and second claims, petitioner contends that he was deprived of the effective assistance of trial counsel.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test.  First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the

14

presumption that, under the circumstances, the challenged action might be sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that such performance prejudiced his defense. *Id.*  To demonstrate prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 694.  The Supreme Court's holding in *Strickland* places the burden on the defendant who raises a claim of ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 130 S. Ct. 383, 390-91 (2009).

More importantly, on habeas review, "the question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable-a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)(quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).  "The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable.  This is different from asking whether defense counsel's performance fell below *Strickland's* standard." *Harrington v. Richter*, 131 S. Ct. at 785.  Indeed, "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not

15

satisfied that standard." *Knowles,* 129 S. Ct. at 1420 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  Pursuant to § 2254(d)(1) standard, a "doubly deferential judicial review" applies to a *Strickland* claim brought by a habeas petitioner. *Id.*  This means that on habeas review of a state court conviction, "[A] state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself."*Harrington*, 131 S. Ct. at 785.  "Surmounting *Strickland's* high bar is never an easy task." *Id.* at 788 (quoting *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010)).

Because of this doubly deferential standard, the Supreme Court has indicated that:

> Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

> *Harrington v. Richter*, 131 S. Ct. at 788.

Finally, this Court is aware that "[R]eliance on 'the harsh light of hindsight' to cast doubt on a trial that took place" almost seventeen years ago "is precisely what *Strickland* and AEDPA seek to prevent." *Harrington v. Richter*, 131 S. Ct. at 789.

Petitioner first claims that his trial counsel was ineffective for failing to call him to testify on his own behalf at trial in support of his claim of self-defense.  The Michigan Court of Appeals, in peremptorily reversing the trial court judge's grant of

16

a new trial, held that petitioner had failed to overcome the presumption that trial counsel rendered effective assistance when advising him regarding his right to testify on his own behalf at trial.

When a tactical decision is made by an attorney that a defendant should not testify, the defendant's assent is presumed. *Gonzales v. Elo*, 233 F. 3d 348, 357 (6th Cir. 2000). A federal court sitting in habeas review of a state court conviction should have "a strong presumption that trial counsel adhered to the requirements of professional conduct and left the final decision about whether to testify with the client." *Hodge v. Haeberlin*, 579 F. 3d 627, 639 (6th Cir. 2009)(internal citation omitted). To overcome this presumption, a habeas petitioner must present record evidence that he or she somehow alerted the trial court to his or her desire to testify. *Id.* Because the trial court record is void of any indication by petitioner that he disagreed with counsel's advice that he should not testify, petitioner has not overcome the presumption that he willingly agreed to counsel's advice not to testify or that his counsel rendered ineffective assistance of counsel. *Gonzales,* 233 F. 3d at 357.

Moreover, counsel's decision to present petitioner's self-defense claim through the testimony of Marcello Guglieletti and petitioner's own statement to Detective Henahan was both an objectively reasonable trial strategy and not prejudicial to petitioner's case, thereby defeating petitioner's ineffective assistance of counsel claim. *See e.g. Skattebo v. Carey,* 294 Fed. Appx. 304,

17

306 (9th Cir. 2008)(it was both objectively reasonable and not prejudicial for defense counsel to rely on transcript of defendant's post-arrest interview with detective and cross-examination of prosecution witnesses to establish heat of passion defense, rather than have defendant testify; transcript and witness testimony presented substance of heat-of-passion defense, whereas calling defendant as witness to present an imperfect self-defense theory rather than a heat of passion theory opened both defenses to impeachment based on defendant's prior felony convictions); *Call v. Polk,* 454 F. Supp. 2d 475, 494-96 (W.D.N.C. 2006)(state appellate court's determination that purported failure of trial counsel to offer defense for petitioner did not constitute ineffective assistance was neither contrary to nor involved unreasonable application of clearly established federal law; although no defense witnesses were called and petitioner did not testify, counsel argued each defense listed by effective cross-examination of state's witnesses); *Malcum v. Burt*, 276 F. Supp. 2d 664 (E.D. Mich. 2003)(petitioner failed to establish that counsel was ineffective for failing to allow petitioner to testify at sexual assault trial; petitioner's attorney indicated that prosecutor had already placed petitioner's statement to police into evidence so as to provide jury with petitioner's version of events, that petitioner would only subject himself to impeachment if he took witness stand, and that petitioner agreed with his advice not to take the stand, and petitioner did not indicate he disagreed so as to overcome presumption that he assented to

18

counsel's tactical decision).

In the present case, petitioner's self-defense theory was presented through the testimony of Marcello Guglieletti and his statement to Detective Henahan.  Had petitioner taken the witness stand, he risked being impeached with such facts as leaving the scene of the shooting, rather than staying to render aid to the victim, the fact that he had told Kathryn Jones that he shot the victim in retaliation for shooting three of petitioner's club members, and his refusal to tell Detective Henahan where his gun was.  This Court concludes that petitioner has failed to show that counsel's reliance on the testimony of Guglieletti and petitioner's statement to the police was an unreasonable trial strategy or prejudicial so as to obtain habeas relief on his claim.

As part of his first claim, petitioner next contends that counsel was ineffective for failing to call Peter Kelly, James Murphy, and Pedro Cindron to testify about prior threats that Maples had made towards petitioner, as well as the decedent's propensity for violence and for carrying a firearm.  In rejecting this claim, Judge Crockett found that such evidence would have been cumulative of evidence presented at trial.  In his second claim, petitioner contends that counsel was ineffective for failing to introduce evidence that petitioner had attempted to obtain a personal protection order against Maples because of these threats.

In the present case, petitioner's counsel called Joseph Whiting and

19

Joseph Mathis to testify about threats that Maples had made in 1993 to kill

petitioner.  Both men testified that they conveyed these threats to petitioner.

Whiting also testified that the decedent had a bad reputation.  Defense counsel

also obtained an admission from Antonio Carmona that he had seen a long gun

at Maples' house.  Sharon Lopez testified that petitioner and Maples had some

trouble with each other about a year or so prior to the shooting.

Petitioner was not prejudiced by counsel's failure to present Peter Kelly,

James Murphy, or Pedro Cindron as witnesses or to introduce evidence that

petitioner had attempted to obtain a P.P.O. against Maples, because this

evidence was cumulative of other evidence that was presented at trial in support

of petitioner's self-defense claim. *See Wong v. Belmontes,* 130 S. Ct. at 387-88.

In this case, the judge, as finder of fact, had significant evidence presented to

him that the decedent had previously threatened petitioner and that he was a

dangerous person, so as to support petitioner's claim of self-defense.  Because

the judge was "well acquainted" with evidence that would have supported

petitioner's self-defense claim, additional evidence in support of petitioner's

defense "would have offered an insignificant benefit, if any at all." *Wong,* 130 S.

Ct. at 388.  Petitioner is not entitled to habeas relief on this claim.

In his second claim, petitioner contends that counsel was ineffective for

failing to object to the trial court judge's findings of fact that a defendant's

subjective belief that the decedent was armed is insufficient to support a self-

20

defense claim, which he raises as a separate claim in Claim # 3, *infra.* Petitioner also contends that counsel was ineffective for failing to object to the introduction of the portion of petitioner's statement to Detective Henahan, in which he exercised his right to remain silent. Petitioner raises this as a separate claim in Claim # 5, *infra.* As this Court will indicate in greater detail when addressing petitioner's third and fifth claims below, neither claim has merit. Counsel was therefore not ineffective for failing to object to these issues.

Petitioner next contends that counsel was ineffective for failing to object to the prosecutor's closing argument, in which she shifted the burden of proof to petitioner to prove his self-defense claim. This Court notes that petitioner was convicted at a bench trial. Assuming that the prosecutor's comments in closing argument were improper, petitioner is unable to show how these remarks would have prejudiced him in a bench trial, where showing prejudice is more difficult. *See Hargrave-Thomas v. Yukins,* 236 F. Supp. 2d 750, 778 (E.D. Mich. 2002). As a judge presiding over a bench trial, Judge Crockett is presumed to have known the law and to have applied it in making his decision. *Id.* at 779. Because the prosecutor's conduct was harmless error at best under these circumstances, counsel's failure to object to the prosecutor's comments and questions was not ineffective assistance of counsel. *See Meade v. Lavigne,* 265 F. Supp. 2d 849, 866 (E.D. Mich. 2003).

Petitioner lastly contends that counsel was ineffective for failing to

21

impeach several witnesses about inconsistencies between their trial testimony and prior statements. Petitioner first claims that counsel should have impeached Sharon Lopez about the fact that she testified at trial that petitioner had a silver gun, whereas she had told the police he had a dark gun. Petitioner further claims that counsel should have confronted Antonio Carmona with his testimony from the preliminary examination, in which he testified that he heard loud voices, a scuffle, and observed petitioner and Maples rise and push each other prior to the shooting.

In the present case, defense counsel cross-examined Carmona extensively. (Tr. 6/28/2004, pp. 57-85; 94-96). Counsel elicited an admission from Carmona that he had a forty year relationship with the victim and that the two were good friends. Counsel brought out the fact that Carmona had been able to gain entry to the VFW bar even though he was not a member, because Sharon Lopez, who had worked as a barmaid there, was his girlfriend. Carmona admitted that when petitioner entered the bar, he exchanged greetings with Maples. Carmona also testified on cross-examination that he heard a noise like arms being pushed. Carmona testified that he did at some point see Maples push petitioner. Counsel challenged Carmona's trial testimony, in which he testified that petitioner had pointed the gun at him or at other bar patrons, by getting Carmona to acknowledge that he had never previously made such an allegation. Although Carmona testified that he saw petitioner leave the bar with

22

a gun, at the preliminary examination, Carmona testified that he did not know if petitioner had a gun at the time. Although Carmona denied that Maples carried guns, he subsequently admitted that he had seen a long gun at the victim's house. Carmona admitted that many of the people at the bar were friends of Maples, implying that they would shade their testimony in his favor. Carmona testified that he did not know where petitioner's gun was pointed when it was fired.

Counsel also questioned Sharon Lopez at great length. (*Id.* at pp. 134-46). Counsel questioned Lopez about the fact that she had been friends with Maples for thirty years and had also had a personal relationship with Antonio Carmona for twenty to twenty five years. Lopez admitted that she did not see what lead up to the shooting. Lopez acknowledged that between the time of the shooting and the time that she gave a written statement to the police, she had contact with Carmona, although she denied talking to him about the case. Lopez admitted that when petitioner first came to the bar, Maples and him shook hands and hugged each other. Counsel got Lopez to concede that she could merely state that Maples was not carrying a gun that night, but could not state that the victim never owned or carried a firearm. Lopez indicated that petitioner and Maples had some trouble with each other about a year or so prior to the shooting.

Counsel adequately impeached Carmona's and Lopez's credibility, as well

23

as brought out their motive for testifying that Maples was not the aggressor in this case. Undisclosed impeachment evidence is considered cumulative "when the witness has already been sufficiently impeached at trial." *Davis v. Booker,* 589 F. 3d 302, 309 (6th Cir. 2009)(quoting *Brown v. Smith*, 551 F. 3d 424, 433-34 (6th Cir. 2008)). Because the credibility of Carmona and Lopez already been impeached, petitioner was not prejudiced by counsel's failure to impeach these two witnesses with cumulative impeachment evidence. *Id.* Petitioner is not entitled to habeas relief on his ineffective assistance of counsel claims.

### C. Claims # 3 and # 8. The sufficiency of evidence claims.

The Court will consolidate petitioner's third and eighth claims for judicial clarity. Petitioner contends that there was insufficient evidence to establish that petitioner did not kill Maples in self-defense.

In reviewing a habeas petitioner's claim that the evidence was insufficient to convict him, a federal court is "bound by two layers of deference to groups who might view facts differently than" the court would. *Brown v. Konteh,* 567 F. 3d 191, 205 (6th Cir. 2009). First, as in all sufficiency of evidence challenges, a court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In doing so, the court does not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute its

24

judgment for that of the jury. *Id.* (citing *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993)).  Therefore, even if a federal habeas court might have not convicted the defendant had it been the factfinder in the state court, it must uphold the verdict if any rational trier of fact could have found the defendant guilty after resolving all factual disputes in favor of the prosecution.  Secondly, even if a federal habeas court concludes that a rational trier of fact could not have found a habeas petitioner guilty beyond a reasonable doubt, on habeas review, the court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown,* 567 F. 3d at 205; *See also Tucker v. Palmer,* 541 F. 3d 652, 666 (6th Cir. 2008)(citing 28 U.S.C. § 2254(d)(1)).  The *Jackson* standard applies to bench trials, as well as to jury trials. *See Gilley v. Collins,* 968 F. 2d 465, 467 (5th Cir. 1992); *Gross v. Romanowski*, No. 2006 WL 3690923, *4 (E.D. Mich. December 12, 2006).

Under Michigan law, the elements of second-degree murder are: (1) a death, (2) caused by an act of the defendant, (3) with malice, and (4) without justification or excuse. *See Stewart v. Wolfenbarger,* 595 F. 3d 647, 654 (6th Cir. 2010); *cert. den.* 131 S. Ct. 650 (2010)(citing *People v. Goecke*, 457 Mich. 442 463-64; 579 N.W.2d 868 (1998)).

Under Michigan law, the elements of felony-firearm are that the defendant possessed a firearm during the commission of, or an attempt to commit, a felony offense. *See Payne v. Smith,* 207 F. Supp. 2d 627, 642 (E.D. Mich. 2002)(citing

25

*People v. Avant*, 235 Mich. App. 499, 505; 597 N.W. 2d 864 (1999)).

Under Michigan law, one acts lawfully in self-defense if he or she honestly and reasonably believes that he or she is in danger of serious bodily harm or death, as judged by the circumstances as they appeared to the defendant at the time of the act. *Blanton v. Elo*, 186 F. 3d 712, 713, n. 1 (6ᵗʰ Cir. 1999)(citing *People v. Heflin*, 434 Mich. 482; 456 N.W. 2d 10 (1990)). However, a defendant is not entitled under Michigan law to use any more force than is necessary to defend himself. *See People v. Kemp,* 202 Mich. App. 318, 322; 508 N.W. 2d 184 (1993). In addition, under Michigan law, before using deadly force in self-defense, a person has a duty to retreat if it is safely possible to do so. *See Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 602 (E.D. Mich. 2001)(citing *People v. Mroue*, 111 Mich. App. 759; 315 N.W. 2d 192 (1981)).

When viewed in a light most favorable to the prosecution, the evidence showed that petitioner did not act in self-defense when he shot the victim. Several witnesses testified that the victim was not armed with a weapon at the time of the confrontation. Antonio Carmona testified that petitioner pushed Maples first during the confrontation, which would suggest that petitioner was the initial aggressor. Officer Martin, who responded to the shooting, did not find a firearm at the crime scene. Petitioner's self-defense claim was further weakened by the fact that petitioner fled the scene. Kathryn Jones testified that petitioner warned her not to mention anything about the shooting. Most importantly,

26

petitioner told Jones that he shot Maples in retaliation for shooting three of petitioner's club members.

In the present case, there was sufficient evidence for a rational trier of fact to conclude that petitioner lacked any honest and reasonable belief that his life was in imminent danger or that he was in danger of great bodily harm.  Further, testimony from some of the witnesses established that petitioner was the aggressor.  Sufficient evidence was presented for a reasonable trier of fact to find beyond a reasonable doubt that petitioner committed all of the elements of second-degree murder and that his killing of the victim was not justified by a claim of self-defense. *See Friday v. Pitcher,* 200 F.Supp.2d 725, 743 (E.D. Mich. 2002).  Finally, in light of the fact that there was evidence that the victim was unarmed when petitioner shot him and petitioner took no steps to retreat or otherwise avoid the victim, a reasonable factfinder could find beyond a reasonable doubt that petitioner did not honestly and/or reasonably fear that he was in imminent danger of death or serious bodily harm from the victim and that he used far more force than necessary to defend himself. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 609 (E.D. Mich. 2002).

To the extent that petitioner challenges the credibility of the witnesses, he would not be entitled to habeas relief.  Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002).  An

27

assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.*

In the present case, there was testimony that petitioner initiated the confrontation, that Maples was not armed with a weapon, and that petitioner shot the decedent even though he was unarmed at the time. Although petitioner presented evidence and testimony that he had acted in self-defense, when evidence in a bench trial "consists largely of contradictory oral evidence, due regard must be accorded the trial court's opportunity to judge the credibility of witnesses." *Bryan v. Government of Virgin Islands,* 150 F. Supp. 2d 821, 827 (D. Virgin Islands 2001). In this case, the trial court judge chose to credit the prosecution witnesses' testimony and not to believe petitioner's version of events. This Court must defer to the trial court's finding beyond a reasonable doubt that the prosecution witnesses were credible. *Id.* at 828. Any insufficiency of evidence claim that rests on an allegation of the witnesses' credibility, which is the province of the finder of fact, does not entitle a habeas petitioner to relief. *See Tyler v. Mitchell,* 416 F. 3d 500, 505 (6th Cir. 2005).

Finally, the trial court judge's allegedly incorrect findings of fact at the bench trial is not a violation of the Due Process Clause in the absence of any Supreme Court decision which requires a trial court judge to make specific

findings of fact at a bench trial in order to satisfy constitutional concerns. *See*

*Wofford v. Straub,* 27 Fed. Appx. 517, 520 (6th Cir. 2001).  Moreover, any failure

by the trial court to set forth the correct specific findings in reaching a verdict in

this case was harmless error, in light of the fact that there was sufficient

evidence that the shooting was done without excuse or justification. *Id.*

Petitioner is not entitled to habeas relief on his third and eighth claims.

### D. Claims # 4 and # 7.  The prosecutorial misconduct claims.

In his fourth and seventh claims, petitioner alleges that he was deprived of

a fair trial because of prosecutorial misconduct.

"Claims of prosecutorial misconduct are reviewed deferentially on habeas

review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004).  Prosecutorial

misconduct will form the basis for habeas relief only if the conduct was so

egregious as to render the entire trial fundamentally unfair based on the totality

of the circumstances. *Donnelly v. DeChristoforo*, 416 U.S. 637, 643-45 (1974);

*Caldwell v. Russell*, 181 F.3d 731, 736 (6th Cir. 1999)("[p]rosecutorial misconduct

may warrant habeas relief only if the relevant misstatements were so egregious

as to render the entire trial fundamentally unfair to a degree tantamount to a due

process deprivation").  The determination whether the trial was fundamentally

unfair is "made by evaluating the totality of the circumstances surrounding each

individual case." *Angel v. Overberg*, 682 F. 2d 605, 608 (6th Cir. 1982). The

Court must focus on "'the fairness of the trial, not the culpability of the

29

prosecutor.'" *Pritchett v. Pitcher*, 117 F. 3d 959, 964 (6th Cir.1997) (quoting *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993)).  Finally, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F. 3d 501, 516 (6th Cir. 2006)(quoting *Donnelly*, 416 U.S. at 645).

In his fourth claim, petitioner contends that the prosecutor committed misconduct by asking the defense witnesses why they had not gone to the police prior to trial to tell them that petitioner had acted in self-defense and had not threatened Kathryn Jones.

For a prosecutor's cross-examination of a witness to rise to the level of prosecutorial misconduct, a defendant is required to show intentional misconduct or reckless disregard for the truth on the part of the prosecutor. *See U.S. v. Sexton,* 119 Fed. Appx. 735, 750 (6th Cir. 2005)*; vacated in part on other grds,* No. 2005 WL 6011238 (6th Cir. April 4, 2005).  A witness's opportunity and motive to fabricate testimony are permissible areas of inquiry. *See People v. Buckey,* 424 Mich. 1, 15, 378 N.W. 2d 432 (1985).  The questions posed by the prosecutor to the defense witnesses were relevant to challenging their credibility. A prosecutor does not commit misconduct by asking witnesses relevant questions. *See Slagle,* 457 F. 3d at 518.

30

In his seventh claim, petitioner contends that the prosecutor committed misconduct by repeatedly asking every defense witness about whether they knew what the penalty for perjury was in a capital case. (Tr. 6/29/1994, p. 48, 95-96; 144-45).

A criminal defendant has a due process right to present witnesses to establish a defense to the charges. *Washington v. Texas*, 388 U.S. 14, 19 (1967).  Although the right to present witnesses precludes prosecutors and judges from improperly threatening a defense witness with a perjury prosecution, *See Webb v. Texas*, 409 U.S. 95, 97-98 (1972), "*Webb*..does not stand for the proposition that merely warning a witness of the consequences of perjury demands reversal." *United States v. Pierce*, 62 F. 3d 818, 832 (6th Cir. 1995).  In fact, a prosecutor "has an obligation to warn unrepresented witnesses of [that] risk." *Id.*  Finally, to establish a claim of witness intimidation, a defendant must demonstrate "government conduct which amounts to substantial interference with a witness's free and unhampered determination to testify" and must prove that any inappropriate conduct was not harmless. *United States v. Foster*, 128 F. 3d 949, 953 (6th Cir. 1997).

In the present case, the prosecutor did not threaten any of the defense witnesses with a perjury prosecution, but merely asked each defense witness if they were aware of the penalty for perjury.  The prosecutor's questions were not improper.  Moreover, petitioner has not shown that the prosecutor's comments to

31

the defense witnesses prevented them from testifying on petitioner's behalf.

Finally, this Court notes that petitioner was convicted at a bench trial. Assuming that the prosecutor's questions were improper, petitioner is unable to show how these questions would have prejudiced him in a bench trial, where showing prejudice is more difficult. *Hargrave-Thomas v. Yukins,* 236 F. Supp. 2d at 778. As a judge presiding over a bench trial, Judge Crockett is presumed to have known the law and to have applied it in making his decision. *Id.* at 779. The prosecutor's questions did not rise to the level of constitutionally impermissible misconduct warranting habeas relief, because the questions were isolated and would not likely have prejudiced a trial judge in a bench trial. *Matthews v. Abramajtys*, 92 F. Supp. 2d 615, 642 (E.D. Mich. 2000); *rev'd in part on other grds,* 319 F. 3d 780 (6th Cir. 2003). Petitioner is not entitled to habeas relief on his fourth and seventh claims.

### E. Claim # 5. The Fifth Amendment claim.

Petitioner next claims that the prosecutor violated his Fifth Amendment right to silence when she elicited testimony from Detective Henahan that petitioner exercised his right to remain silent during police interrogation.

Sergeant Henahan testified that he took a statement from petitioner after his arrest. Petitioner told Sergeant Henahan that the victim threatened him and appeared to be reaching for a gun, at which point petitioner shot his gun in self-defense. (Tr. 6/28/1994, pp. 99-100). Sergeant Henahan then testified as

32

follows:

> I then asked the Defendant: "What kind of gun did you have?"
>
> The Defendant replied, "I don't know what kind it was."
>
> I then asked the Defendant: "Was it your gun? Where is it now?
>
> Subject, the Defendant, then stated to me, "I don't want to answer
> any more questions right now."
> (*Id.* at p. 100).

It is a violation of the Due Process clause of the Fourteenth Amendment for the prosecution to use a defendant's post-arrest silence to impeach exculpatory testimony given by the defendant at trial. *Doyle v. Ohio*, 426 U.S. 610, 619 (1976); *See also Gravley v. Mills*, 87 F. 3d 779, 786 (6th Cir. 1996). However, a single isolated reference to a defendant's exercise of his right to remain silent does not deprive a criminal defendant of a fair trial when the prosecution does not use the defendant's silence to prove his guilt. *U.S. v. Weinstock*, 153 F.3d 272, 280-81 (6th Cir. 1998); *See also U.S. v. Robinson,* 357 Fed. Appx. 677, 683 (6th Cir. 2009)(both citing *Greer v. Miller,* 483 U.S. 756 (1987)).

In the present case, there was only one isolated reference to petitioner's refusal to answer Sergeant Henahan's question.  The prosecutor never mentioned petitioner's refusal to answer this question in her opening or closing arguments. (Tr. 6/28/1994, pp. 18-20; 6/29/1994, pp. 161-67).  Because there was only one isolated reference to petitioner's exercise of his right to remain

33

silent, and this silence was never exploited by the prosecutor, petitioner is not entitled to habeas relief on his fifth claim.

### F. Claim # 6. The discovery claim.

Petitioner lastly claims that the prosecutor violated a discovery order by not turning over Sharon Lopez's statements to the police to defense counsel until trial.

To the extent that petitioner is claiming that the prosecutor violated state discovery rules, he would not be entitled to habeas relief. "It is well settled that there is no general constitutional right to discovery in a criminal case." *Stadler v. Curtin*, 682 F. Supp. 2d 807, 818 (E.D. Mich. 2010)(citing *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977); *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)). A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review, because it is not a constitutional violation. *See Lorraine v. Coyle,* 291 F. 3d 416, 441 (6th Cir. 2002).

To the extent that petitioner is contending that the violation of the discovery order violated his due process rights, this claim must fail also. Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). There are three components of a true *Brady* violation: (1) the evidence at issue must be

34

favorable to the accused, either because it is exculpatory or because it is

impeaching; (2) the evidence must have been suppressed by the state, either

willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v.*

*Greene*, 527 U.S. 263, 281-82 (1999).

Petitioner's *Brady* claim fails for several reasons.  First, Lopez's

statements to the police were disclosed to petitioner during trial.  *Brady* generally

does not apply to the delayed disclosure of exculpatory information, but only to a

complete failure by the prosecutor to disclose such information. *See United*

*States v. Davis,* 306 F. 3d 398, 421 (6th Cir. 2002)(internal citations omitted).  If

previously undisclosed evidence is disclosed during trial, no *Brady* violation

occurs unless the defendant is prejudiced by its nondisclosure. *United States v.*

*Word*, 806 F. 2d 658, 665 (6th Cir. 1986); *See also United States v. Benc*s, 28 F.

3d 555, 560-61 (6th Cir. 1994).  The Sixth Circuit noted that "[T]he Supreme

Court rejected the claim that the duty to disclose hinges on the usefulness of the

material to pretrial preparation.  Such a standard would 'necessarily encompass

incriminating evidence as well as exculpatory evidence, since knowledge of the

prosecutor's entire case would always be useful in planning the defense.'"

*Bencs,* 28 F. 3d at 560, n. 5 (quoting *United States v. Agurs,* 427 U.S. 97, 112,

n. 20 (1976)).   Therefore, any claim that the late disclosure of these discovery

materials may have precluded defense counsel from adequate trial preparation

is non-cognizable pursuant to *Agurs. See Burns v. Lafler,* 328 F. Supp. 2d 711,

35

724 (E.D. Mich. 2004)(citing *Bencs,* 28 F. 3d at 561).

In addition, petitioner has failed to offer any evidence or argument to show any of this evidence contained exculpatory material.  The burden is on a habeas petitioner to prove that evidence that is required to be disclosed to him under *Brady* was not disclosed to him. *Coe v. Bell*, 161 F. 3d 320, 344 (6th Cir. 1998). Allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns,* 328 F. Supp. 2d at 724.  "[M]ere speculation that a government file may contain *Brady* material is not sufficient" to prove a due-process violation. *United States v. Driscoll*, 970 F. 2d 1472, 1482 (6th Cir.1992), *abrogated on other grounds by Hampton v. United States*, 191 F.3d 695 (6th Cir.1999).  Petitioner has failed to show that any of Lopez's statements exculpated him of this crime.  Petitioner is therefore not entitled to habeas relief on his discovery claim. *Burns,* 328 F. Supp. 2d at 724.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [4] 28 U.S.C. §§ 2253(c)(1)(A), (B).  A court may issue a COA

---

[4]  Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

"only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court will grant petitioner a certificate of appealability with respect to his first claim involving counsel's ineffectiveness in failing to call petitioner to testify on his behalf in support of his self-defense claim.  Although the Court believes that its decision with respect to this claim was correct, the Court notes that the trial court judge in this case granted petitioner a new trial on his ineffective assistance of counsel claim, ruling that petitioner's testimony as to whether he had acted in self-defense might have made a difference.  The fact that the trial court judge believed that petitioner may have been prejudiced as a result of his counsel's failure to call him to testify concerning his self-defense claim shows that jurists of reason could decide this portion of petitioner's first

claim differently or that the issue deserves encouragement to proceed further. *See Robinson v. Stegall,* 157 F. Supp. 2d 802, 820, fn. 7 & 824 (E.D. Mich. 2001)(habeas petitioner entitled to certificate of appealability from district court's determination that state appellate court reasonably applied federal law in determining that any Confrontation Clause error was harmless, where one judge on the Michigan Court of Appeals dissented and indicated that he would have reversed petitioner's conviction; dissent showed that a reasonable jurist found that the issue should have been decided differently). The Court will grant petitioner a certificate of appealability on the portion of his first claim involving counsel's failure to call petitioner to the witness stand to testify.

The Court will deny a certificate of appealability with respect to petitioner's remaining claims, because jurists of reason would not find the Court's resolution of the claims to be debatable.

Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would not be frivolous. A court may grant *in forma pauperis* status if the court finds that an appeal is being taken in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

38

**IT IS FURTHER ORDERED** that the Court issues petitioner a certificate of appealability with respect to the portion of petitioner's first claim concerning counsel's failure to call petitioner to testify concerning his self-defense claim and denies a certificate of appealability with respect to the remaining claims.

IT IS FURTHER ORDERED that petitioner is granted leave to proceed on appeal *in forma pauperis.*

s/Marianne O. Battani
**HON. MARIANNE O. BATTANI**
UNITED STATES DISTRICT COURT

DATED: April 19 ,2011

CERTIFICATE OF SERVICE

I hereby certify that on the above date a copy of this Opinion and Order was served upon Phillip Comorski, Counsel for the Petitioner, and Debra Gagliardi, Counsel for the Respondent, electronically.

s/Bernadette M. Thebolt
Case Manager